Good morning. Good morning, Your Honors. May it please the Court. Lee Tucker for Efrain Becerra-Garcia, and I'd like to reserve two minutes for rebuttal. This case involves a stop on the Tohono O'odham Reservation in Arizona. It was a stop that exceeded the authority of the rangers who conducted it. Excuse me. Two rangers stopped my client, Efrain Becerra, on a remote, deserted dirt road on the reservation. I'm sure you're going to get to it, but we don't have a lot of time. These things happen. But between the time we had the briefing and the time we arrived here on September 14th, the Arizona Court of Appeals weighed in on the status of these rangers. Would you please give us your view on how that case affects your argument? Yes, Your Honor. Thank you. And I did submit a 28-J responsive letter following the government's citation of this case. I don't think that the Chavez case weighed in on the status of the rangers. I think what the Chavez case did was avoid the issue of the rangers by analyzing that stop strictly as a private person's arrest. Well, doesn't the Chavez case hold that the rangers aren't law enforcement officers? Well, I don't – Your Honor, it does say that. I don't – It says that. It does say that. How are we supposed – I guess, you know, we're kind of in this odd situation where any time there's a state law issue where a state court has weighed in, even if it's not the Supreme Court, we've got to go with it. So it says that. Well, we have to analyze it with that as our foundation? Well, two things, Your Honor. First of all, their statement that the rangers are not law enforcement is not critical to their holding, and it clearly wasn't litigated if you look at the status of the case. At the lower court, it looks like the lower court got around it by saying we're just going to see if they have authority as a private person to conduct this stop. Was it a breach of the peace offense? It was. Therefore, we'll say it was authorized because they were private persons. Why isn't that equally applicable here? If we look at them as private citizens, then they're outside the reach of the Fourth Amendment. No, Your Honor, because the reason – it's not a breach of the peace offense here, and they would not be authorized as private citizens to conduct this stop in this case, and that's detailed in our opening brief. Furthermore, even if that court concludes they're law enforcement officers, that court clearly was operating from a different set of facts. And I'll note that court is talking about rangers on the San Javier Reservation. Now, how do we know it's the same group of – the same rangers? It's not, Your Honor. Our rangers are on the Tohono O'odham Reservation. Now, undoubtedly, there are similarities, but they're not the same. In the Chavez court, their rangers were not armed. In this case, these rangers were armed. One of the rangers had a 12-gauge shotgun issued by the Tohono O'odham Police Department. So I think that there are different facts, and furthermore, even if one were to hold they're not full law enforcement officers, clearly they're government agents. These are people who are employed by the Tohono O'odham Police Department. The rangers are a division of the police department. They drive marked – they drive marked vehicles issued by the police department. They wear uniforms issued by the police department. They carry handcuffs. This one carried a shotgun. And they – their vehicles are outfitted with aftermarket strobe lights, which were used in this case to effectuate the stop. I don't think Chavez – I clearly don't – I don't think Chavez at all meant to say that the Fourth Amendment does not apply to these rangers. Now, the finding of the stop by the magistrate – would you like me to – No, I'm just listening. We're listening. The finding of the stop by the magistrate was based on credible evidence and should not be disturbed. And it was credible both from the point of view of Mr. Becerra's testimony, which was quite credible. He described completely accurately these very unusual lights, aftermarket, mounted low on the front of the car, flashing strobe lights. There's no way he would have known what those looked like if the rangers had not used them. Furthermore, the ranger's testimony was not credible on this issue. The two rangers who testified, who made the stop, supplied contradictory testimony. Ranger Ruiz said, I was the driver. If the lights had been turned on, I would have done it, and I never turned them on. Ranger Calabaza said Ruiz did turn on the lights, and said that the reason he turned them on was to warn oncoming traffic so that there would not be any danger. Well, that contradicts their repeated testimony that it was a deserted area, a dirt road, difficult to travel. It also contradicts Ranger Ruiz, who said, I didn't turn on the lights, and not only that, there would have been no reason to turn on the lights, because there was no traffic in the area. And furthermore, Ranger Calabaza said that, excuse me, Mr. Becerra stopped before the rangers had even turned around. And that's not at all credible, that someone would pass a law enforcement vehicle going the other direction, and then just stop. So it's a finding supported by the evidence, and should not be disturbed. It was interpreted as a command to stop, and a reasonable person would have interpreted flashing strobe lights as a command to stop. The stop was outside the authority of the rangers. That's not controverted. Interestingly, neither the magistrate judge nor the district court judge looked at the issue directly of authority to stop and its implication under the Fourth Amendment. The magistrate said the stop is okay based on reasonable suspicion of trespassing. What's the major case that you rely on for the proposition that the stop violated the Constitution? Well, Your Honor, in my brief at 17, I cite several cases, including Robles-Alvarez from this court. The cases that I've cited, as Your Honor's noted, there are, there is no directly on point authority, but those cases deal with officers making arrests outside of their jurisdiction. Have you read the Pierce case? Yes, Your Honor. United Circuit case? Yes. You think that's not on point? Um. Let me read you part of that language. Thus, in order for an arrest to be reasonable for Fourth Amendment purposes, the arresting officer must have probable cause and must be authorized by state and or municipal law to effect a custodial arrest for the particular offense. I do think that's applicable, and I believe I cited that case, Your Honor. I absolutely do. That principle would seem to apply to a seizure. If there's no authorization for the seizure, then it violates the Constitution. Isn't that what Pierce suggests? It is. And in Robles-Alvarez, this court said that in order for it to be a reasonable seizure, there must both be cause to do it and authority to conduct the seizure. So the fact that they weren't authorized does violate the Fourth Amendment. Clearly, as I already talked about, the Fourth Amendment applies to them, and there are good, very, very sound reasons why it should. This is a growing trend. To use these sort of semi or quasi law enforcement officers, we have the rangers on the Tohono O'odham Reservation. We have rangers on the San Javier Reservation, as we see in the Chavez case. We have some counties, at least in Arizona, using sheriff's posses that are non-deputized employees who go out and What is your view of the responsibility of these rangers? What authority do they have? They testified that they have authority to detain individuals. Okay. So if they're going to detain, actually, they didn't effect an arrest here. They contacted border officials, didn't they? Your Honor, they stopped the vehicle, and my client was removed. According to my client, he was immediately handcuffed, and then the rangers did call in to the police department and border patrol and held my client handcuffed in their car with a shotgun drawn for half an hour. That's after they found the smuggled individuals. Yes, correct. Well, my client says he was handcuffed before that, but the gun and the placement in the car was after they found him. Let's just go back, though, to their authority. Do they have the authority to detain, you say? They say they do. It was very unclear how they distinguished that from an arrest. These are minimally trained officers. I don't think they have. You said we're kind of swimming around here to try to figure out the confines of their authority in order to fit it into your argument. They definitely don't have authority to stop. That was unequivocal both by them and by an O'odham police officer. How can you detain without stopping? What they said is if they come across a car, the drivers typically stop on their own because they get paranoid, so they haven't effectuated the stop, but then they will detain them. Wait a minute. You say they would detain them by doing what? Keeping them company until the rangers get back in their car and they just start to drive away. There actually was testimony. Yes, that they could get back in their car and drive away. Or if it's a detention on foot, if they come across them on foot, one of the rangers said, yeah, well, if they run away, they run away. Excuse me. We won't stop them. Excuse me. You're down to 45 seconds. I see that. And I'll save that for rebuttal. Thank you. You're welcome. Counsel. Good morning. May it please the Court. My name is Eric Markovich. I'm an assistant United States attorney in Tucson. I think the Court can see why my initial argument before the hearing was that there was a stop, but there was no stop. And I do advocate that as a ground for the Court affirming, but my primary argument is that if there was a stop, it was reasonable. First, you say there's no stop, and we say, but there's this magistrate finding, and then you say, well, that's a ground for the Court to affirm. So you're saying that the officers, whatever they are, don't have the authority to stop? Well, that's one issue I wanted to touch upon, Your Honor, because there's this question. Well, yes or no? What's your answer? Well, I guess it's qualified yes, they don't have authority, but what authority? There's no testimony that it's a violation of authority under State or tribal law. It's really the police department protocol, which is the point I'm making. What I'm saying is, if you have a police officer, if you have a police officer who's a police officer with the Ho'onomato Nation, testify that in some instances they would ask rangers to stop vehicles. She also testified that the rangers aren't supposed to stop vehicles because they don't drive emergency type vehicles. They don't drive vehicles with lights on top of them. Yes, so let me get this subtlety that you're bringing to us. The only reason that they can't stop people is because the police department just has that as a custom and practice. There is no state law that says they can't stop. No municipal law, no law, no rule of law law. Just a practice and custom of the police department? Yes, sir. That's what the record reflects. No tribal law. That's correct, Your Honor, and I think that's how the cases that the defendant cites and the case that Your Honor referred to Pierce, that's how they're different from the case at hand, is there you have officers violating state or local law exceeding their authority. Except Pierce puts it in the positive. It says must be authorized by state municipal law to affect the custodial arrest for the particular offense. Were these rangers authorized by state or municipal or tribal law to stop and seize cars? There's no evidence in the record on whether they're authorized under state or tribal law. Are they law enforcement officers? Well, Your Honor, at the time of the hearing, I think I was hard-pressed to say they weren't law enforcement officers. So you pretty much agreed they were law enforcement officers? At the time of the hearing, yes. Where do they get their authority? Yeah. Where do they get their authority to stop? Because, I mean, in other words, how am I different than they are? Well, you're different. I mean, I could get in a car and without an emergency light, would I be one could I be them or would I have to divide my authority from some law? Well, I think it's some of the things that Ms. Tucker talked about is that they're employed by the time they get to jail, they're not under any kind of Tohono O'odham Police Department. They're cloaked with certain authority. They wear uniforms, they drive marked vehicles, they carry handguns or, I'm sorry, a rifle if certified, they carry handcuffs. They do make stops if requested. They do detain people if requested. Aren't they supposed to be on the lookout for trespassers? Yes, sir. And this vehicle obviously was not a vehicle that was registered on the reservation. That is correct, Your Honor. And they stopped it. In their duties, wouldn't they normally have not only the right but almost the obligation if they see somebody they suspect is trespassing to stop them, to inquire? I mean, rather than just, I don't know how you scare them off if they're in a vehicle. Yes, sir. And that was the government's position below in the first instance that there wasn't a stop because the Rangers, that's just generally something they didn't do. But if the court were to conclude that there was a stop, that it was reasonable based on trespassing. And there's no doubt and there's no dispute in this case that the Tohono O'odham Police Department can enforce the trespassing laws of the nation. So if a, I guess kind of what I've got to is that if you, if we concede that these folks are government actors, which I'm willing to, which is the position I took before the magistrate, notwithstanding Chavez, I'm willing to live with that. If they're government actors and the defendant concedes on appeal, it's not raised in the opening brief at all, that there was reasonable suspicion based on trespassing, then what are we looking at here? We have government actors who stopped the vehicle. We're looking to see if they were authorized to do so, because this is a strange breed of government actors. Can a federal fruit inspector do this? I mean, it's a federal officer, he has reasonable suspicion, but can a federal fruit inspector for the FDA stop cars? I would say no, because the FDA is not charged with the action. But there's no authority. So what we're looking for from you is where is the authority under the law for these Rangers to stop a car? The Tohono O'odham Police Department, Tohono O'odham Nation is responsible for enforcing the trespassing laws. These Rangers are employed by that nation in a quasi-law enforcement capacity as government agents. The authority stems from that. But when you say that, but where do we, what document? In other words, they have a lot of clerks that are probably employed there, too, and I don't think they can go out and stop cars. So is there some line from the so-called tribal police to these officers that is in written form or testimonial form? There's nothing in the record as to their authority within the police department to conduct stops. There's plenty of testimony as to their ability to detain. Okay, let's stop there. This case I find to be very troubling in that regard. If they can detain people, I mean, that suggests to me like if I'm walking around and I see someone, and if I can't stop them, but they're there, and I say, hey, you're not supposed to be here, I'm going to detain you. So I do, whether with handcuffs or force of authority. Would that be okay for these people? The evidence in the record, Your Honor, is that in that situation, they would radio the situation in to the Honolulu Police Department or Border Patrol, and they'd receive instructions whether to detain these individuals. But they can't stop. But do you agree that they don't have the authority to stop? I agree that to an extent, although, as I said, yes, they testify that they don't make stops. I mean, they don't put on flashing lights and ask a vehicle to pull over. Well, but that's a different question than do they have the authority to stop people? I would say they do, and I base that upon Officer Miles' testimony that in the record, the supplemental record at 96, she testified that the Rangers are not supposed to stop vehicles because they're not emergency vehicles, which suggests that this policy is for their safety, not because they're not qualified, but for their safety. She also testified that the Rangers are not supposed to pull vehicles over unless it's something like a major emergency. If we ask them to do something like that, then they might do that. So I'd suggest the authority is there. Well, but, you know, I mean, you're teasing authority out of very little. I mean, the logical train says, you know, they have to have authority to do this, otherwise the Constitution doesn't allow it. And I don't see anything that says they have the authority to stop. To the contrary. Well, the authority comes from their position within this. They basically are working as an arm of the Tohono O'odham police. But if you take that testimony and apply it to these facts, they did not have the authority to make this stop, because it's not the situation that's described as the situation where they can stop. Well, I'd ask the court to look at the nature of this stop, too. It's not that these Rangers were acting in a heavy-handed manner. I don't think anybody suggests that they went overboard, so to speak. The question is whether they could even go at all. In other words, whether they could stop at all. So it's not really impugning, you know, their intent or their desire to kind of investigate this. The question is, who has the burden to show the authority to stop? Well, I guess that was my, as I was thinking about this whole argument, I started thinking back to the hearing. And my position would have been the defendant should have pointed to some state or tribal law that was violated in this case. They made a motion to knock out the evidence, and they claimed it was an illegal seizure, and the fruit of the seizure ought to be suppressed. And then the burden falls on you to justify the seizure. Well, Your Honor, the defendant's motion in the hearing before the magistrate was based upon reasonable suspicion, the lack of reasonable suspicion. Well, you say that, but then it was raised in front of the district court, all the other issues. And the district court considered this what I consider to be a side argument. The main argument was the lack of reasonable suspicion. Well, it turns out it's the main argument. It is now. The other one kind of went away, right? The reasonable suspicion falls out because of the briefing. As far as I can tell, that is gone. In the district court, in fact, in the magistrate's opinion, he recognizes the ranger's lack of authority to involuntarily stop travelers, but nevertheless concludes that the seizure was lawful in this case. Okay. So do you think that's a legal conclusion or a mixed fact law in terms of the lack of authority? I think it's probably, say, a mixed question, Your Honor. But sometimes those mixed questions are very confusing. I think that his factual finding as to their authority to stop is a factual finding. I mean, that finding itself is going to be a factual finding as to whether they have authority to stop. So if we end on that factual finding, unless it's clearly erroneous, we stick with it, correct? That's correct, Your Honor. But one thing I'd like to emphasize. Let's move from that. If he determines that there isn't the authority to stop and that's, in your view, a factual application of the facts, which we can't disturb unless it's clearly erroneous, isn't that the end of the case? Well, I think the whole question of whether there's reasonable suspicion is a question of law. And within it, there are these factual findings. And one thing I want to try to focus on in my last five seconds is the authority that we're talking about. I've just moved on my time. And we're not, in every case cited by the defendant and the cases I try to point out, the authority is some breach of State or municipal law. Here, there is no evidence of any kind of breach in that respect. And, in fact, there is testimony to the contrary, that the violation is not of law. It's a Tohono O'odham policy or protocol within the police department. And I think that's why this case is different from the cases the defendant relies upon. Thank you, counsel. Thank you. You may respond. Could you respond to his last point that the subtlety is that it's an internal violation, but not a more fundamental legal violation in terms of authority? Yes, Your Honor. It does violate tribal policy, but that's not why it's unconstitutional. It's unconstitutional because it violates the Fourth Amendment. It's fine if the tribe wants to have extra eyes and give them vehicles and weapons and send them out, but they can't then get around the Fourth Amendment. Those people aren't trained. They're not certified under Arizona standards. And they're clearly not authorized and not permitted to make stops. It's not the Constitution prohibits that kind of show of a government agent fully armed, fully marked, pulling someone over without the corresponding authority to conduct the stop. The magistrate did not find authority to stop. He did not address that. He did not find authority to stop. The record is replete with references to a lack of authority to stop. One ranger even said, we're not allowed to make stops. So as to the question, I know you don't have much time, but looking back to Chavez, can trespassing be close enough, likened to a breach of the peace, so that the stop could be authorized as a private person's stop? Not on these facts, Your Honor. On these facts, there was no one in the area. There was no one who could have been disturbed by the traveling of this van on this road. The van was traveling slowly, so I think not on these facts, although conceivably on other facts it could have been. Okay, thanks. I have nothing further. Thank you, counsel. Thank you. The case just argued is ordered and submitted.
judges: Meskill, Trott, McKeown